IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SOCHEATH UON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TANABE INTERNATIONAL CO., | : | |
| LTD., et al. | : | NO. 10-3792 |

MEMORANDUM

Bartle, C.J.                                          November 30, 2010

   Peter Uon, a citizen of Pennsylvania, died while
servicing a case glue machine in the course of his employment at
Mid-Atlantic Packaging & Specialties, Inc. ("Mid-Atlantic").
Plaintiff, the administrator of Peter Uon's estate and a
Pennsylvania citizen, filed suit in the Philadelphia County Court
of Common Pleas against Mid-Atlantic and the entities involved in
producing and selling the machine, Tanabe International Co., Ltd,
Enprotech Corp., Itochu International, Inc., J.D. Engineers,
B.V., and Alliance Machine Systems International.[1]  Defendants
Enprotech and Itochu International removed the action based on
this court's diversity jurisdiction.  Like plaintiff and his
decedent, Mid-Atlantic is a citizen of Pennsylvania.  Defendants

_____

1.  The entities involved in producing and selling the case glue
machine are not Pennsylvania corporations.  Tanabe International
Co., Ltd is a Japanese corporation, Enprotech Corp. is an Ohio
corporation, Itochu International, Inc. is a New York
corporation, J.D. Engineers, B.V. is a corporation of the
Netherlands, and Alliance Machine Systems International is a
Washington state corporation.  None is alleged to have its
principal place of business in Pennsylvania.

maintain that plaintiff fraudulently joined Mid-Atlantic to prevent this court from exercising subject-matter jurisdiction over the action. The Notice of Removal suggests Mid-Atlantic is not a proper defendant because plaintiff's claims against Mid-Atlantic are barred as a matter of law under the Pennsylvania Workers' Compensation Act ("PWCA"), 77 PA. STAT. ANN. §§ 1-2708. That statute generally prevents employees from maintaining common-law tort claims against their employers for work-related injuries. See id. at §§ 431, 481(a).

Plaintiff, in his motion to remand, counters that the fraud claim against Mid-Atlantic fits within an exception to the general bar on employee tort actions and that therefore complete diversity is lacking.

Mid-Atlantic's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure mirrors the Notice of Removal. It argues that the PWCA prohibits plaintiff from asserting against it the claims he has stated in the complaint.

I.

According to the complaint, the decedent died on August 28, 2009 when his hair, which hung bound behind him in a pony-tail, became entangled in a spinning shaft of Mid-Atlantic's case glue machine. Moments before the accident, he had bent to assist in cleaning glue deposits from the machine. Due to the machine's design, it could be cleaned only while its rollers were in motion. Mid-Atlantic had provided no training on cleaning the case glue machine and did not require employees operating the

machine to wear their hair at a particular length or to wear hair nets. Following an investigation, the Occupational Safety & Health Administration ("OSHA") cited Mid-Atlantic for eight violations of federal safety regulations related to Mid-Atlantic's failure to develop an acceptable protocol for using and cleaning the case glue machine.

Plaintiff's complaint asserts causes of action against Mid-Atlantic for fraud and negligence, as well as for damages under Pennsylvania's Wrongful Death Act and Survival Act. In the fraud claim, plaintiff alleges that at the time of the accident, Mid-Atlantic knew the case glue machine was dangerous because other employees had been injured while operating or cleaning the machine and that in at least one case an employee lost an appendage. The complaint further alleges Mid-Atlantic concealed from the decedent that operating the machine was dangerous, that it had compelled other employees injured while using the machine to continue working without seeking medical attention, and that it had dissuaded those same employees from filing workers' compensation claims. The decedent purportedly died as a result of his reliance upon these fraudulent misrepresentations and concealments.

II.

Defendants may remove an action filed in state court if the action is one over which the federal district courts have original jurisdiction. 28 U.S.C. § 1441(a) (2006); Brown v. Francis, 75 F.3d 860, 865 (3d Cir. 1996). Lawsuits filed in a

-3-

state court between parties of diverse citizenship and alleging

damages exceeding $75,000 may be removed because federal courts

have original jurisdiction over such cases.  28 U.S.C. § 1332(a);

In re Briscoe, 448 F.3d 201, 215-16 (3d Cir. 2006).  Diversity of

citizenship, however, must be complete.  That is, the citizenship

of all plaintiffs must be diverse from the citizenship of all

defendants.  Caterpillar, Inc. v. Lewis, 519 U.S. 61, 67-68

(1996); Strawbridge v. Curtiss, 7 U.S. 267 (1806); Grand Union

Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc., 316

F.3d 408, 410 (3d Cir. 2003).[2]

A plaintiff may not thwart removal to federal court by

including meritless claims against a non-diverse defendant.

Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992);

Stanley v. Exxon Corp., 824 F. Supp. 52, 53-54 (E.D. Pa. 1993).

"Fraudulently" joined non-diverse defendants will not prevent a

federal court from exercising diversity jurisdiction "if 'there

is no reasonable basis in fact or colorable ground supporting the

claim against the joined defendant, or no real intention in good

faith to prosecute the action against the defendant or seek a

joint judgment.'"  In re Briscoe, 448 F.3d at 216 (quoting Abels

v. State Farm Fire & Cas. Co., 770 F.2d 26, 32 (3d Cir. 1985)).

In reviewing a removed action for the possibility of fraudulent

---

2.  If the representative appears to have been selected merely to
"manufacture" diversity jurisdiction, the court must examine the
facts to determine whether the representative "is a straw
fiduciary whose citizenship is to be disregarded."  McSparren v.
Weist, 402 F.2d 867, 875-77 (3d Cir. 1968).  No such examination
is necessary here.

joinder, this court must "rule out any possibility that a state court would entertain the cause." Id. at 219 (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992)). If the court finds joinder was fraudulent, it may "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Briscoe, 448 F.3d at 216 (quoting Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999) (internal quotations omitted).

In conducting the fraudulent joinder inquiry, we "accept any well-pleaded allegations as true, and resolve uncertainty in the law governing the [claim at issue] in plaintiff's favor." Briscoe, 448 F.3d at 219-20. Despite the similarity between this standard and the standard applicable on a motion to dismiss, our Court of Appeals has made it clear that the standard for determining fraudulent joinder is higher than the standard to be applied in deciding whether a plaintiff has failed to state a claim for relief under Rule 12(b)(6). Batoff, 977 F.2d at 851-52; Boyer v. Snap-on-Tools Corp., 913 F.2d 108, 111-13 (3d Cir. 1990).[3] Thus, if the removing defendants can carry their "heavy burden" in showing joinder was fraudulent, we simultaneously resolve Mid-Atlantic's motion to dismiss because

_____

3. We note that our Court of Appeals does not appear to have reconsidered the relationship between these standards since the Supreme Court's decisions in Iqbal v. Ashcroft, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) reformulated the notice pleading standard.

the fraudulent joinder analysis necessarily will have determined plaintiff has not stated a claim that could survive a Rule 12(b)(6) motion. Batoff, 977 F.2d at 852. Conversely, if joinder was not fraudulent, then complete diversity does not exist, this court lacks subject-matter jurisdiction to consider Mid-Atlantic's Rule 12(b)(6) motion, and the action must be remanded.

## III.

In Pennsylvania, an employee's work-related injuries and death are compensable exclusively through the PWCA. 77 PA. CONS. STAT. §§ 411(1), 481(a); Poyser v. Newman & Co., Inc., 514 Pa. 32, 35-36 (1987). Thus, employees may not bring common-law causes of action against their Pennsylvania employers for work-related injuries but instead are guaranteed compensation for injuries incurred on the job without establishing the employer's fault. Poyser, 514 Pa. at 36; Kline v. Arden H. Verner Co., 503 Pa. 251, 254 (1983). As the Pennsylvania Supreme Court has explained, the PWCA "therefore deprived workers of some rights in exchange for surer benefits, and immunized employers from common law actions in order to make benefits available to workers who were theretofore without practical remedies." Kuney v. PMA Ins. Co., 525 Pa. 171, 174 (1990). Where the PWCA's exclusivity provision applies, Pennsylvania courts lack subject-matter jurisdiction to consider an employee's tort claims. LeFlar v. Gulf Creek Indus. Park No. 2, 511 Pa. 574, 581 (1986).

The employer's shield from tort liability on work-related injuries under the PWCA is virtually impenetrable no matter how willful or wanton the employer's conduct. 77 PA. STAT. ANN. §§ 431, 481(a) (2010). In Poyser, an injured employee brought an action in trespass alleging that his employer had engaged in intentional conduct by requiring the employee to use an inherently hazardous machine the employer knew violated federal safety regulations. 514 Pa. at 34-35. The Pennsylvania Supreme Court held that the PWCA is the injured employee's exclusive remedy even here where an employer intentionally or through "willful and wanton conduct" causes an employee harm. Id. at 36; see also Wendler v. Design Decorators, Inc., 768 A.2d 1172, 1175-76 (Pa. Super. Ct. 2001).

Similarly, deceptive conduct does not create an exception to employers' common law tort immunity under the PWCA. The Pennsylvania Supreme Court considered the case of a plaintiff who alleged that his employer's insurer intentionally determined not to pay a valid workers' compensation claim and then purposefully concealed this decision from the injured employee. Kuney, 525 Pa. at 173-74. It concluded that the insurer could not be liable in tort damages to the employee because an employer's insurer, like the employer itself, is statutorily immune from such claims. Id. at 176-77. That immunity from actions in tort extends even to those with whom an insurer might conspire to terminate wrongfully PWCA benefits to injured employees. Alston v. St. Paul Ins. Co., 531 Pa. 261, 262-63,

-7-

267-68 (1992); see Santiago v. Penn. Nat. Mut. Cas. Ins. Co., 613
A.2d 1235, 1238-43 (Pa. Super. Ct. 1992).

In addition, the Pennsylvania Superior Court affirmed
dismissal of a complaint alleging that an employer intentionally
caused injuries to employees by failing to warn them of the toxic
nature of chemicals involved in their work when it removed
warning labels from the chemical containers and assured the
employees that the chemicals were safe. Blouse v. Superior Mold
Builders, Inc., 526 A.2d 798, 799-800 (Pa. Super. Ct. 1987). The
court reiterated that even in the face of intentional and
deceptive conduct, the PWCA must be the exclusive source of an
employee's compensation. Id.; see also Ranalli v. Rohm & Haas
Co., 983 A.2d 732, 735 (Pa. Super. Ct. 2009).

There is, however, one narrow exception to employers'
immunity from tort claims arising from workplace injuries. In
Martin v. Lancaster Battery Co., an employee had suffered an
injury arising from work-related exposure to lead. 530 Pa. 11,
13-14. Federal regulations required the employer to monitor the
lead levels in its employees' blood. Id. at 14. The employer
intentionally concealed the results of blood tests from the
employee and altered the results of those tests. Id. As a
result of the employee's continued exposure, the employee
suffered greater injury than would have occurred had the employee
learned the true results of his blood tests and had reduced his
exposure to lead accordingly. Id. Significantly, the plaintiff
did not seek compensation for the injury itself, but instead for

-8-

the aggravation to the injury caused by the employer's willful failure to disclose accurate test results.  Id. at 20.  On these allegations, the Pennsylvania Supreme Court allowed the lawsuit to proceed against the employer.  The court held that the PWCA did not immunize the employer from a common-law claim for fraudulent misrepresentation which led to an aggravated injury. Id. at 19.

        Subsequently, the Pennsylvania courts, our own Court of Appeals, and this court have read Martin narrowly and have refused to permit tort actions against an employer except in circumstances specifically sanctioned by the holding in that case.  See e.g., Winterberg v. Trans. Ins. Co., 72 F.3d 318, 323 (3d Cir. 1995); Care v. Reading Hosp. & Med. Ctr., No. 03-4121, 2004 WL 728532, at *11-*12 (E.D. Pa. Mar. 31, 2004); Fry v. Atl. States Ins. Co., 700 A.2d 974, 976 (Pa. Super. Ct. 1997).  In responding to an argument for an expansive reading of Martin, our Court of Appeals observed:

> Plaintiff here has tried to characterize Martin as carving out an exception to the exclusivity rule whenever there is egregious and flagrant misconduct of the employer or its insurer.  This is not an appropriate and objective reading ....  If an allegation of "flagrant misconduct" or "bad faith" becomes the talisman by which a plaintiff gains access to a common law jury and escapes the exclusivity provisions of the Act, then Pennsylvania's workmen's compensation scheme runs the risk of dismantlement.

Winterberg, 72 F.3d at 323.  To fit within the Martin exception, the employee must show that his employer aggravated an existing

injury through fraudulent misrepresentation or concealment of facts pertaining to that injury.  Ranalli, 983 A.2d at 735-36; Santiago, 613 A.2d at 1238-43.

The law in Pennsylvania is so thoroughly settled that no possibility exists that plaintiff has any viable claim against Mid-Atlantic.  According to the complaint, the decedent died from injuries sustained on the job, which is indisputably an injury within the scope of the PWCA and for which Mid-Atlantic is otherwise immune.  Plaintiff does not even attempt to justify his claims against Mid-Atlantic for negligence, wrongful death, and damages under the Survival Act.  These claims are barred by the PWCA, and Mid-Atlantic cannot be held liable on them.

Plaintiff's claim for fraud is equally untenable. Plaintiff argues repeatedly that Mid-Atlantic made a "fraudulent misrepresentation that amounts to flagrant conduct" by concealing or misleading decedent and other employees as to the dangerous nature of the case glue machine that killed decedent.  That argument misunderstands the holding of Martin entirely.  The exception enunciated there requires proof the employer "concealed, altered, or intentionally misrepresented information *related to the work-related injury which results in its aggravation*."  Santiago, 613 A.2d at 1241 (emphasis supplied). Plaintiff has made no such allegation.  Consequently, the Martin exception has no applicability here.

Because the claims stated against Mid-Atlantic are barred under Pennsylvania law, this court finds its joinder as a

defendant to be fraudulent.  Thus, we will dismiss all claims

against Mid-Atlantic but retain jurisdiction over the action

against the remaining defendants.  <u>In re Briscoe</u>, 448 F.3d 201,

216 (3d Cir. 2006).