IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AYO MARIA GOODEN | : | CIVIL ACTION |
| v. | : | |
| COMMONWEALTH OF PENNSYLVANIA, et al. | : | NO. 10-3792 |

MEMORANDUM

Bartle, C.J. December 10, 2010

     Dr. Ayo Gooden was a non-tenured faculty member at Cheyney University ("Cheyney"), a Pennsylvania state-sponsored university, which declined to renew her employment contract for the 2010-2011 academic year. Gooden's amended complaint alleges this non-renewal violated her First and Fourteenth Amendment rights and was sanctionable under the Pennsylvania Whistleblower Act. The defendants are the Commonwealth of Pennsylvania, the Pennsylvania State System of Higher Education ("PASSHE"),[1] and four Cheyney faculty members and administrators, Elaine Carter, Jolly Ramakrishnan, Michelle[2] Howard-Vital, and Ivan Banks.

---

1. The caption to plaintiff's amended complaint recites separately the names of PASSHE's board of governors. The summons was issued to the board collectively, and none of plaintiff's factual allegations pertains to any individual member of the board. Accordingly, the court will construe all claims against PASSHE as against the entity only.

2. The caption incorrectly lists "Michell" Howard-Vital as a defendant. Cheyney University's website confirms the correct spelling.

Before the court is the motion of defendants Commonwealth of Pennsylvania, PASSHE, Ramakrishnan, Howard-Vital, and Banks to dismiss plaintiff's amended complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim upon which relief can be granted under Rule 12(b)(6).[3]

I.

When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). For the purposes of Rule 12(b)(6), we then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "'mere possibility of misconduct.'" Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1950).

Similarly, when reviewing a facial challenge to subject-matter jurisdiction under Rule 12(b)(1), the court accepts the plaintiff's allegations as correct and draws

---

3. The docket does not indicate that defendant Elaine Carter has been served. She has not appeared and has not filed a motion to dismiss.

inferences in the plaintiff's favor.  Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293, 300 & n.4 (3d Cir. 2002); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  A facial challenge to subject-matter jurisdiction is one in which a defendant argues that "the allegations on the face of the complaint, taken as true," are insufficient to invoke the court's jurisdiction.  Turicentro, 303 F.3d at 300.  Claims of sovereign immunity like the one presented here are evaluated as facial challenges.  See In re Kaiser Group Int'l, Inc., 399 F.3d 558, 561 (3d Cir. 2005).

## II.

According to the amended complaint, Cheyney hired Gooden in August 2006 as a full-time, tenure-track assistant professor in the Department of Guidance and Counseling.  Cheyney employed Gooden under a series of renewable one-year contracts.  Cheyney is a member of PASSHE, an entity operated by the Commonwealth of Pennsylvania.

Prior to joining Cheyney's faculty, Gooden had worked elsewhere implementing Pennsylvania's Act 101 Program ("Act 101").  Act 101 is designed to provide college access to low-income Pennsylvanians who had low grade point averages or low standardized test scores in high school.  The Act allows Cheyney to fund academic tutoring, instruction, and career counseling.  Despite Gooden's prior work experience, an unnamed person informed her during her first year at Cheyney that "she would not be working on any Act 101 matters."

In her first year at Cheyney, Gooden uncovered what she perceived to be faculty members misusing Act 101 funds. Gooden does not specify the nature of this misuse, but she avers that faculty members Elaine Carter and Jolly Ramakrishnan[4] were the primary offenders. Gooden alerted Cheyney president Michelle Howard-Vital "and other supervisors" of these perceived abuses. Cheyney allegedly took no action in response to Gooden's reports. In December 2006, Cheyney renewed Gooden's contract for the 2007-2008 academic year.

Following Gooden's complaints, Carter and Ramakrishnan attempted to have her removed from her position. Carter recommended Cheyney not renew Gooden's contract for the 2008-2009 school year. Gooden filed grievances, presumably with Cheyney, one of which requested that someone other than Carter or Ramakrishnan evaluate her. Apart from Carter and Ramakrishnan, all who evaluated Gooden found her to be a valuable faculty member.

Despite Carter's recommendation, Cheyney renewed Gooden's contract for the 2008-2009 and 2009-2010 academic years. In January 2009, Cheyney appointed Gooden as the Act 101 director because she was the only remaining faculty member in the Department of Guidance and Counseling. In reviewing Cheyney's Act 101 budget, Gooden learned non-Act 101 employees were being

---

4. Gooden does not state what positions Carter or Ramakrishnan held or whether these faculty members also worked in the Department of Guidance and Counseling.

paid with Act 101 funds.  She also discovered that Ramakrishnan was being paid a full salary while on maternity leave.  Gooden believed this to be in violation of an employment agreement between PASSHE and a union representing state university faculty members.  Gooden notified Ivan Banks, Cheyney's vice president of academic affairs, and others of these anomalous salaries.  In June 2009, unnamed individuals met to discuss Ramakrishnan's salary but no action was taken.

In September 2009, Ramakrishnan wrote a letter criticizing Gooden's performance, and in November 2009, Ramakrishnan wrote a second letter recommending Gooden's contract not be renewed for the 2010-2011 year.  Sometime thereafter, Banks recommended the same.  Subsequently, Cheyney president Howard-Vital notified Gooden that Cheyney would not renew her employment contract.

Gooden maintains that Carter, Ramakrishnan, Banks, and Howard-Vital improperly influenced Cheyney's non-renewal decision.  Gooden also alleges that third or fourth-year non-tenured faculty members at Cheyney were entitled to notice of non-renewal if Cheyney determined not to renew their contract.  According to the amended complaint, if a contract was not renewed, the faculty member was entitled to file a grievance and to receive an arbitration hearing.  Gooden contends generally that she did not receive the process to which she was entitled.

Count I of the amended complaint avers that Howard-Vital, Ramakrishnan, Banks, and Carter are liable under 42 U.S.C.

§ 1983 for violating Gooden's First Amendment rights in punishing her for speaking on matters of public concern. In Count II, she pleads that all defendants violated the Pennsylvania Whistleblower Act, 43 Pa. Cons. Stat. § 1421 et seq., by firing her in retaliation for reporting illegal conduct. Count III asserts that all defendants are liable under § 1983 for violating Gooden's Fourteenth Amendment rights in depriving her of property without due process. In Count V,[5] the Commonwealth of Pennsylvania, PASSHE, and Howard-Vital are alleged to be liable under § 1983 for violating Gooden's "Fourth [sic] and Fourteenth" Amendment rights in failing to train Cheyney employees concerning employees' free speech rights.

III.

Under well-established principles of sovereign immunity, the Commonwealth of Pennsylvania, absent its consent, is immune from suit in this court in actions initiated by its own citizens. Hans v. Louisiana, 134 U.S. 1, 15-18 (1890); see Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996); Carter v. City of Phila., 181 F.3d 339, 347 (3d Cir. 1999). Gooden is a citizen of Pennsylvania, and the Commonwealth has statutorily withheld consent from suit in the federal courts. 42 Pa. Cons. Stat. § 8521(b); see Lombardo v. Penn. Dep't of Pub. Welfare, 540 F.3d 190, 192-96 & n.3. Accordingly, the Commonwealth must be

---

5. Plaintiff voluntarily dismissed Count IV from her amended complaint.

dismissed from each of the counts in which it is named, that is Counts II, III, and V.

A state agency or board that acts as an arm of the state is also entitled to sovereign immunity from suit in the federal courts. Bowers v. Nat'l Coll. Athletic Ass'n, 475 F.3d 524, 546, 549 (3d Cir. 2007); Benn v. First Judicial Dist. of Penn., 426 F.3d 233, 239-40 (3d Cir. 2005). In determining whether an agency is so intertwined with the state as to be an arm of the state, the court considers the agency's status under state law, the agency's level of autonomy from the state, and whether funds to pay a judgment would come from state coffers. Fitchik v. N.J. Transit Rail Op., Inc., 833 F.2d 655, 659 (3d Cir. 1989). Applying these factors, our Court of Appeals and other district courts have found that PASSHE is an arm of the Commonwealth entitled to sovereign immunity. Skehan v. State Sys. of Higher Ed., 815 F.2d 244, 246-49 (3d Cir. 1987); see also O'Hara v. Ind. Univ. of Penn., 171 F. Supp. 2d 490, 498 & n.8 (W.D. Pa. 2001) (gathering cases). Because this court lacks subject-matter jurisdiction over Gooden's claims against PASSHE, we will dismiss Counts II, III, and V as to it.

IV.

Count I alleges that Carter, Ramakrishnan, Howard-Vital, and Banks violated Gooden's First Amendment rights by retaliating against her for bringing to light Cheyney's alleged misuse of Act 101 funds. To prevail in a § 1983 action for retaliation under the First Amendment, the plaintiff must

establish that she engaged in a First Amendment-protected activity and "that the protected activity was a substantial factor in the alleged retaliatory action." Gorum v. Sessoms, 561 F.3d 179, 184-85 (3d Cir. 2009); see Garcetti v. Ceballos, 547 U.S. 410, 418-20 (2006); Hill v. Borough of Kutztown, 433 F.3d 225, 241 (3d Cir. 2006). Whether protected speech occurred is a question of law while the causation element is a question of fact. Hill, 455 F.3d at 241. Additionally, the plaintiff must show that the government lacked "'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." Hill, 433 F.3d at 241 (quoting Garcetti, 547 U.S. at 418); see Gorum, 561 F.3d at 185.

Protected speech takes place when a public employee speaks "as a citizen on a matter of public concern." Garcetti, 547 U.S. at 418; see Foraker v. Chaffinch, 501 F.3d 231, 239 (3d Cir. 2007). Critically, an employee does not speak as a citizen "when he makes a statement pursuant to his 'official duties.'" Gorum, 561 F.3d at 185 (quoting Garcetti, 547 U.S. at 421). Whether an employee spoke pursuant to his or her official duties is a "practical" inquiry guided by an understanding that "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." Garcetti, 547 U.S. at 424-25. As long as the employee speaks as a citizen, the mere fact that the speech was made inside the workplace or

that the speech concerned the subject-matter of employment is not dispositive. Id. at 420-21.

Since the Supreme Court's Garcetti decision, courts have found that employee's internal speech opposing an employer's misuse of funds is not protected if the speech "owes its existence to a public employee's professional responsibilities." Garcetti, 547 U.S. at 431. For example, the Court of Appeals for the Eleventh Circuit considered the case of a community college vice president whose contract was not renewed following her reports to superiors and subordinates of improper and illegal expenditures. Vila v. Padron, 484 F.3d 1334, 1336-38 (11th Cir. 2007). The vice president, who oversaw the legal department, criticized the college for circumventing state law requiring bidding on contracts, accepting a "gift" in exchange for purchasing real property, and using college funds to illustrate a poetry book published by a trustee's daughter. Id. The court, on a motion for summary judgment, determined that the vice president's legal objections were not protected because they concerned matters within her official duties as the supervisor of the legal department. Id. at 1339-40.

Similarly, in Williams v. Dallas Independent School District, the Court of Appeals for the Fifth Circuit affirmed summary judgment against an athletic director who alleged retaliation for authoring a memorandum to the school principal critical of the school's method of accounting for athletic funds. 480 F.3d 689, 691-94 (5th Cir. 2007). Managing accounting

procedures was not routinely part of the director's job.  Id. at 691.  Nevertheless, the court reasoned that the speech arose from the athletic director's official duties because the accounting procedures affected the funds available to him in performing his duties and was based in part on his special knowledge of teams' gate receipts and accounting procedures at other schools.  Id. at 693-94.

Gooden became Cheyney's Act 101 director in January 2009.  Inescapably, any subsequent allegations of improper Act 101 expenditures she made to her superiors were statements made pursuant to her official duties.[6]  Garcetti, 547 U.S. at 424-25; Gorum, 561 F.3d at 185; Renken v. Gregory, 541 F.3d 769, 770-73 (7th Cir. 2008); Vila, 484 F.3d at 1339-40; Williams, 480 F.3d at 693-94.  Gooden's brief in opposition to defendants' motion to dismiss does not even attempt to contest this conclusion. Accordingly, these statements were not First Amendment protected speech.

The only remaining speech Gooden alleges motivated her non-renewal occurred during the 2006-2007 academic year, her first year at Cheyney.  This speech occurred approximately three years before Howard-Vital elected not to renew Gooden's contract sometime after November 2009.  In the interim, however, Gooden

---

6.  This would include the allegations of Act 101 abuse she describes in paragraph 27 of her amended complaint, her statements about Ramakrishnan's improper salary while on maternity leave, and the statements about Act 101 abuse Gooden alleges making to Banks in paragraph 33 of the amended complaint.

concedes that Cheyney renewed her contract three times and promoted her to director of Cheyney's Act 101 program. This sequence of events does not render plausible any inference that Gooden's 2006-2007 speech was a "substantial factor in the alleged retaliatory action." See Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009); Gorum, 561 F.3d at 184. Even drawing all inferences in Gooden's favor, this speech is so distant in time from the alleged retaliation that the amended complaint does not "suggest" causation. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). Our Court of Appeals recently affirmed a district court's grant of summary judgment where the allegedly protected speech occurred in November 2002 and the alleged retaliation took place in January 2003. The temporal separation simply could not support an inference of causation. Perez v. N.J. Transit Corp., 341 Fed. App'x 757, 763 (3d Cir. 2009).

Moreover, Gooden reported the alleged misuse of funds only to Cheyney administrators during 2006-2007. The audience of that speech reinforces the conclusion that she spoke as an employee. See Foraker, 501 F.3d at 243; Haynes v. City of Circleville, Ohio, 474 F.3d 357, 364 (6th Cir. 2006). In Freitag v. Ayers, a female guard made statements about sexual harassment that led to her termination. 468 F.3d 528, 546 (9th Cir. 2006). Some of these statements were made in letters to a state senator and a state-appointed inspector general. Other statements were

made in internal reports to superiors.  Id.  The Court of Appeals for the Ninth Circuit found that statements made to an elected representative and the inspector general could support a First Amendment retaliation claim but that the internal reports were employee speech not entitled to First Amendment protection.  Id.

The internal nature of Gooden's 2006-2007 speech combined with the three-year separation from the alleged retaliation does not make it plausible that Gooden engaged in protected speech that caused Cheyney not to renew her contract. Accordingly, Gooden's Count I fails to state a claim upon which relief can be granted.

V.

Count III of Gooden's amended complaint alleges all defendants are liable under § 1983 for depriving her of property without due process of law under the Fourteenth Amendment.  See Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005). Specifically, Gooden maintains she had a protected property interest in her position at Cheyney.

To have a property interest in one's employment, the employee "must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972); Chabal v. Reagan, 841 F.2d 1216, 1223 (3d Cir. 1988).  Consequently, once a court determines that a government employee could be terminated at will, the due process analysis ends because the employee had no protected property interest.  Bishop v. Wood, 426 U.S. 341,

345-46 & n.8; Elmore, 399 F.3d at 282. Whether an employee has a legitimate expectation of continued employment is determined by state law, and that expectation may arise from either a statute or a contract with the government. Perry v. Sindermann, 408 U.S. 593, 601 (1972); Roth, 408 U.S. at 578; Robertson v. Fiore, 62 F.3d 596, 601 (3d Cir. 1995); Unger v. Nat'l Residents Matching Prog., 928 F.2d 1392, 1398 (3d Cir. 1991). In Pennsylvania, public employees are generally presumed to be employees at will. Elmore, 399 F.3d at 282 (citing Scott v. Phila. Parking Auth., 166 A.2d 278, 280 (Pa. 1960)). Furthermore, a property interest exists under an employment contract only when termination is allowed "for cause." Unger, 928 F.2d at 1399; Sanguigni v. Pittsburgh Bd. of Pub. Ed., 968 F.2d 393, 401 (3d Cir. 1992).

Gooden alleges that her property interest arose in a document the amended complaint calls an "Employment Agreement." Gooden's opposition to defendants' motion to dismiss clarifies that she is not basing her claims on her annual contract with Cheyney. Rather, she alleges her property interest arose from a collective bargaining agreement ("CBA") between PASSHE and a union representing state college and university faculty members.

The court has reviewed the relevant portions of the CBA, which it may do in considering a motion to dismiss under Rule 12(b)(6). In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1424-25 (3d Cir. 1997). The CBA provides that Cheyney must decide each year whether to renew a contract with a non-tenured faculty member such as Gooden. University appointments

for non-tenured faculty last only one year.  The CBA does not set forth any criteria on which the university must base its retention decision.  This is in contrast to tenured faculty, who hold tenured status indefinitely and may be terminated or disciplined only for "just cause."  A non-tenured faculty member is entitled to request the reasons for non-renewal in writing.

The CBA contains a grievance procedure that fourth-year non-tenured faculty members may invoke depending on who in the university community has recommended retention.  If a department chairperson and department evaluation committee both recommend retention, but the university president declines to renew the contract, the faculty member may invoke the grievance procedure.  If the faculty member obtains a retention recommendation from either the department chairperson or department evaluation committee but not both, the university president refers the non-renewal decision to the university-wide tenure committee.  The faculty member may then invoke the grievance procedure only if two of the three reviewers (department chairperson, department evaluation committee, and university-wide tenure committee) recommend renewal but the university president decides not to new the contract.[7]

The CBA's grievance procedure contains four steps.  The first two steps involve review of the complaint by members of the

---

7. A faculty member may file a grievance for failure to comply with renewal-related deadlines regardless of who recommends retention.

university administration, and the third step requires review by PASSHE's chancellor. There is no indication in the CBA that the university is bound by the PASSHE chancellor's proposed resolution. The first three steps may be initiated by a faculty member. The fourth step is binding arbitration that may be initiated only by the union and in which the union acts as the interested party. In any grievance or arbitration, the non-tenured faculty member bears "the burden of proof ... to show why he/she should be renewed."[8]

The amended complaint alleges that both Ramakrishnan and Banks recommended Cheyney not retain Gooden for the 2010-2011 year. Gooden does not allege whether Ramakrishnan was the department chairperson for the Department of Guidance and Counseling during the 2009-2010 year. The pleading's allegation that Banks recommended against renewal appears at odds with the CBA's provision indicating the faculty member's second review comes from a department evaluation committee.[9]

From our review of the amended complaint and CBA, it cannot plausibly be inferred that Gooden possessed a property right in her continued employment. The CBA explicitly provides a process for awarding tenured status, allows tenured faculty to

---

8. The CBA does not specify a burden of proof for tenured faculty members who are terminated or suspended for just cause and grieve that determination.

9. This is possibly because Gooden was the only person working in her department at the time of Cheyney's decision not to retain her.

retain that status from year to year, and requires the university to show "just cause" for terminating for disciplining tenured faculty.  In contrast, there is no "just cause" provision in the CBA applicable to Gooden and those in her position.  Sanguigni, 968 F.2d at 401; Unger, 928 F.2d at 1397-99.

Moreover, the procedural protections available to Gooden under the CBA do not create a property right.  Plaintiff avers that under the CBA she was entitled to notice in writing if her contract was not renewed.  The Supreme Court found in Roth that a professor's right to notice of non-renewal is not sufficient to create a legitimate claim for continued employment protected by the Due Process clause.  Roth, 408 U.S. at 568, 578.  Thus, Gooden's right to receive in writing the reasons for her non-renewal creates no property right.

Gooden further alleges she was entitled to a grievance and arbitration process but that she was denied these procedural protections.  The CBA grievance procedure, however, confers no property right.  Again, the grievance procedure does not provide that Gooden may be terminated or disciplined only "for cause." Furthermore, Gooden bears the burden of proving her contract should be renewed at all steps of the grievance procedure, including during the review by the arbitrator and PASSHE chancellor.  This is the inverse of a "for cause" provision, which puts the onus on the employer to establish that the employee should not be retained.  In addition, Gooden could gain access to a binding arbitration only if the union decided to

invoke the procedure on her behalf.  Thus, Gooden had no individual contractual right to force Cheyney to submit to an arbitrator's decision.

In sum, no provision of the CBA or its grievance procedure explicitly establishes Gooden could be terminated only "for cause."  Id. at 576-78; Sanguigni, 968 F.2d at 401; Unger, 928 F.2d at 1397-99.  Accordingly, the facts Gooden alleges and the employment contract on which she relies do not create "a legitimate claim of entitlement" to continued employment protected by the Fourteenth Amendment.  Sanguigni, 968 F.2d at 401; Unger, 928 F.2d at 1397-99.  We will dismiss Count III.

## VI.

Gooden's Count V asserts that the Commonwealth, PASSHE, and Howard-Vital failed to train Cheyney employees "in matters related to employees' rights to freedom of speech."  Gooden's brief in response to defendants' motion to dismiss does not oppose dismissal of this claim.  Accordingly, we will dismiss Count V of the amended complaint.

## VII.

Elaine Carter is named as a defendant in Counts I and III of the amended complaint.  Carter is not one of the defendants bringing the motion to dismiss, or she has not been served with process.  Plaintiff's allegations against Carter in Counts I and III are identical to those made against Howard-Vital, Ramakrishnan, and Banks.  Plaintiff has been fully heard with regard to the allegations in Counts I and III as to the

moving defendants, and as explained above, those counts cannot stand.  Dismissal of Counts I and III does not hinge on facts or actions unique to the moving defendants but instead on issues of law common to all individual defendants.  Therefore, plaintiff will not be prejudiced by a sua sponte dismissal of Counts I and III as to Carter.  See Couden v. Duffy, 446 F.3d 483, 491, 501 (3d Cir. 2006); Gibson v. Mayor and Council of City of Wilmington, 355 F.3d 215, 223-24 (3d Cir. 2004).

## VIII.

Having dismissed the causes of action arising under federal law, the only remaining claim is Count II, an action under Pennsylvania's Whistleblower Act, 43 Pa. Cons. Stat. § 1421 et seq.  Because only a state law claim remains, the court declines to exercise jurisdiction under 28 U.S.C. § 1367(c)(3) and will dismiss Count II without prejudice.